IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| GREAT LAKES INSURANCE SE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:19-cv-00138-O |
| | § | |
| HORTON FAMILY TRUST, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff/Counter-Defendant's Motion for Final Summary Judgment and Brief in Support (ECF Nos. 59–60), filed January 11, 2021; Defendant/Counter-Plaintiff's Response (ECF No. 62), filed February 1, 2021; and Plaintiff/Counter-Defendant's Reply (ECF No. 63), filed February 16, 2021. Having considered the motion, briefing, and applicable law, the Court **GRANTS** the motion.

**I.    BACKGROUND**[1]

This dispute arises from commercial insurance policy GRLK033801 (the "Policy") on improvements at 300 Clay Street, Nocona, Texas, 76255 (the "Property") issued by Plaintiff/Counter-Defendant Great Lakes Insurance SE ("Great Lakes") to Defendant/Counter-Plaintiff Horton Family Trust, LLC ("HFT") from June 11, 2018, to June 11, 2019. *See* Pl.'s App. 2–107, ECF No. 61; Def.'s App. Ex. A., ECF No. 62-1. On or about July 9, 2018, HFT reported a claim, number 2018-02151 (the "Claim"), for damage to the Property's roof that purportedly

---

[1] For summary judgment briefs filed with appendices, parties "must support each assertion by citing each relevant page of its own or the opposing party's appendix." L. R. Civ. P. 56.5(c); *see also* Fed. R. Civ. P. 56(c)(1). The parties' briefs are littered with factual assertions devoid of citations to any summary judgment evidence. It is not the role of the Court to parse through pages of appendices to identify relevant factual grounding for the parties' assertions. *See, e.g., United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

occurred during rain, hail, and wind on July 1, 2018. *See* Pl.'s App. 110–11, ECF No. 61. Following a November 7, 2018, inspection of the Property by Worley Claims Services, LLC ("Worley"), HFT received a letter declining its claim, based on Worley's conclusion that none of the damage to the Property came from the July 1, 2018, storm. *See* Pl.'s App. 113–15, ECF No. 61; Def.'s App. Ex. E, ECF No. 62-5; *see also* ECF No. 1-2.

On January 8, 2019, Worley forward a copy of the November 26, 2018, denial letter and urged HFT to "put in writing your disagreement with the field adjuster[']s findings." Pl.'s App. 116, ECF No. 61. Six months later, Worley received a letter from HFT dated June 24, 2019, detailing HFT's disagreement with Great Lakes's amount of the loss of the Property and naming its appraiser and claiming to be "invoking [its] rights under the appraisal process of our [P]olicy." Pl.'s App. 234–36, ECF No. 61. In a letter dated July 26, 2019, Worley responded by sending HFT a copy of the Policy, rejecting any demand for payment, and attaching a blank proof of loss form. *See* Pl. App. 117–18, ECF No. 61; Def.'s App. Ex. C, ECF No. 62-3.

On September 27, 2019, HFT filed an *ex parte* Application for Appointment of Umpire in the 97th Judicial District Court of Montague County, Texas, which indicated that the Application was sent to Great Lakes via certified mail in its Certificate of Service. Pl.'s App. 119–25, ECF No. 61. The following week, the court granted the Application, appointing Mark Weeks as umpire at HFT's behest. Pl.'s App. 260, ECF No. 61. Appraiser Doug Laczynski conducted an appraisal on December 1, 2019, finding a net claim less recoverable depreciation of $593,070.14. Def.'s App. Ex. G, ECF No. 62-7. In accordance with that appraisal, Weeks issued and signed an umpire's appraisal award of $593,070.14, allegedly effectuated by two signatures but unsigned by Great Lakes's appraiser. *See* Pl.'s App. 265, ECF No. 61; Def.'s App. Ex. H, ECF No. 62-8. HFT's

counsel emailed Great Lakes's counsel to demand payment based on Weeks and Laczynski's appraisal award. *See* Pl.'s App. 261–64, ECF No. 61.

On December 12, 2019, Great Lakes filed this declaratory judgment suit against HFT seeking the Court to "declare the parties' rights, liabilities, and obligations under the Policy's appraisal clause with respect to HFT's attempt to invoke appraisal in this matter." Compl. ¶ 23, ECF No. 1. HFT filed counterclaims against Great Lakes, alleging five state-law claims and seeking a declaratory judgment as to the enforceability of the award. *See generally* Am. Countercls., ECF No. 42. On January 11, 2021, Great Lakes moved for summary judgment as to its declaratory relief and each of the counterclaims asserted against it in HFT's First Amended Counterclaim. Mot., ECF No. 59. The motion is now ripe for the Court's consideration. *See* ECF Nos. 60–63.

## II. LEGAL STANDARD

The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary

3

judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250–52.

## III. ANALYSIS

Great Lakes moves for summary judgment as to its sought declaratory relief and as to each of the counterclaims asserted against it in HFT's First Amended Counterclaim. Mot. ¶¶ 2–3, ECF No. 59; *see also* Am. Compl. ¶ 36,[2] ECF No. 36[3]; Am. Countercl. ¶¶ 47–76, ECF No. 42. Specifically, Great Lakes maintains that the appraisal award should be set aside because it "does not comply with the [P]olicy's requirements [and] was made without authority." Mot. ¶ 24, ECF

---

[2] Great Lakes mislabels its concluding paragraph on page 12 of its Amended Complaint as "24." To eliminate confusion and maintain chronology, the Court construes the relevant paragraph as Paragraph 36.

[3] Great Lakes seeks declaratory relief that:
    (a) no disagreement over the amount of loss exists that would satisfy the Policy's condition precedent to invocation of appraisal;
    (b) appraisal is inapplicable to and incapable of resolving the parties' disagreement over coverage in this matter;
    (c) Defendant Horton Family Trust, LLC's attempted invocation of appraisal was invalid and ineffective;
    (d) Plaintiff Great Lakes Insurance SE was not obligated to name an appraiser, participate in appraisal, or otherwise act in response to Defendant's attempted invocation of appraisal; and
    (e) Plaintiff Great Lakes Insurance SE is not obligated in any way under the policy to pay the appraisal award signed by Douglas Laczynski and Mark Weeks.

No. 60. HFT disagrees, arguing that (1) "Great Lakes failed to comply with the [P]olicy by failing to request a sworn proof of loss," and that, (2) even if not, "as the denial [of the claim] was prior to a request for a sworn proof of loss, . . . Great Lakes waived the obligation to submit a [] sworn proof of loss before invoking appraisal." Resp. 9, 11, ECF No. 62.

"[A]n insured has a duty to read and be familiar with the terms of his own insurance policy," and "an insured is bound to the terms of the policy whether he reads it or not." *Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 792 (Tex. App.—Dallas 2011, no pet.) (citations omitted). Appraisal clauses are "uniformly included in most forms of property insurance policies." *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009) (citation omitted). "Ordinarily, appraisal provides an efficient way for an insurer and the insured to resolve differences through the evaluation of competing estimates by a neutral third-party umpire." *GuideOne Mut. Ins. Co. v. First Baptist Church of Brownfield*, No. 5:19-cv-086-H, 2020 WL 6268477, at *3 (N.D. Tex. Oct. 20, 2020). But courts must disregard a flawed award issued under an appraisal clause. *Johnson*, 290 S.W.3d at 895. "When addressing challenges to the validity of appraisal awards, Texas courts have recognized three situations where the results of an otherwise binding appraisal may be disregarded: (1) when the award was made without authority; (2) when the award was the result of fraud, accident, or mistake; or (3) when the award was not made in substantial compliance with the terms of the contract." *Hennessey v. Vanguard Ins. Co.*, 895 S.W.2d 794, 798 (Tex. App.–Amarillo 1995, writ denied) (citations omitted). In sum, appraisers may only act within the certain powers conferred by a policy's appraisal clause to determine the amount of a loss and cannot "construe the policy or decide whether the insurer should pay." *Johnson*, 290 S.W.3d at 890.

The Court first turns to whether HFT's failure to provide a signed and sworn proof of loss and the parties' failure to disagree over the amount of a covered loss constituted a failure to comply with a condition precedent for appraisal.

**A. HFT Failed to Comply with a Condition Precedent for Appraisal**

Great Lakes contends that "[a]s a condition precedent to appraisal, the policy requires HFT to provide a signed and sworn proof of loss, and further requires Great Lakes and HFT to first disagree over the amount of a covered loss." Mot. ¶ 24, ECF No. 60. HFT disagrees with Great Lakes's conclusion but raises no factual or legal argument to rebut it. *See* Resp. 10, ECF No. 62 ("While Horton still disagrees with Great Lakes' position that completion of a sworn proof of loss is a condition precedent to appraisal, that argument is moot."). Instead, HFT argues that "Great Lakes failed to comply with the condition precedent of [HFT] submitting such proof by failing to request it in the first place" thereby never giving rise to HFT's condition precedent of completing and sending the signed and sworn proof of loss. Resp. 10, ECF No. 62. In reply, Great Lakes maintains that the policy explicitly required HFT to send a signed and sworn proof of loss containing the information requested by Great Lakes as a condition precedent to appraisal. Reply ¶¶ 11–16, ECF No. 63.

"[T]he construction of an insurance policy is a question of law." *ARM Props. Mgmt. Grp. v. RSUI Indem. Co.*, 400 F. App'x 938, 940 (5th Cir. 2010) (citations omitted). Texas courts "apply the same rules to the interpretation of insurance policies as to any other contract"—that is, the Court must "read all parts of each policy together and exercise caution not to isolate particular sections or provisions from the contract as a whole." *Id.* (citation omitted). "In order to determine whether a condition precedent [to a contract] exists, the intention of the parties must be ascertained;

6

and that can be done only by looking at the entire contract." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 109 (Tex. 2010) (citation omitted).

Here, the Court begins with the language of the Policy, reading the contract as a whole. The parties cite the same provision but depart as to its effect. The relevant provisions of the Policy are as follows:

> **E. Loss Conditions**
> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:
> . . .
> **Appraisal**
> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:
> >    **a.** Pay its chosen appraiser; and
> >    **b.** Bear the other expenses of the appraisal and umpire equally.
> If there is an appraisal:
> >    **a.** You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition; and
> >    **b.** We will still retain our right to deny the claim.
> . . .
> **3. Duties In The Event Of Loss Or Damage**
> **a.** You must see that the following are done in the event of loss or damage to Covered Property: . . . **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.
> . . .
> **4. Loss Payment**
> . . .
> **g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and: **(1)** We have reached agreement with you on the amount of loss; or **(2)** An appraisal award has been made.
> . . .
> **1. Claims Handling**
> **a.** Within 15 days after we receive written notice of claim, we will:

7

>    **(1)** Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;
>    **(2)** Begin any investigation of the claim; and
>    **(3)** Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.
>    **b.** We will notify you in writing as to whether:
>    **(1)** The claim or part of the claim will be paid;
>    **(2)** The claim or part of the claim has been denied, and inform you of the reasons for denial;
>    **(3)** More information is necessary; or
>    **(4)** We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.
>
>    We will provide notification, as described in **b.(1)** through **b.(4)** above, within:
>    **(1)** 15 business days after we receive the signed, sworn proof of loss and all information we requested; or
>    **(2)** 30 days after we receive the signed, sworn proof of loss and all information we requested, if we have reason to believe the loss resulted from arson. If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

Def.'s App. 3, 30–31, 40, ECF No. 62-1; Pl.'s App. 30–31, 40–42, ECF No. 61.

Two sister courts have conclusively held that, when the contract contains nearly identical language to the language here, the sworn proof of loss is a condition precedent to appraisal. *See Brownfield*, 2020 WL 6268477, at *1 (Hendrix, J.); *GuideOne Mut. Ins. Co. v. First United Methodist Church of Hereford*, No. 2:18-cv-140-Z-BR, 2020 WL 3485620 (N.D. Tex. Apr. 1, 2020) (Kacsmaryk, J.), *reconsideration denied,* No. 2:18-cv-140-Z-BR, 2020 WL 3485623 (N.D. Tex. Apr. 29, 2020), and *appeal dismissed sub nom. GuideOne Ins. Co. v. First United Methodist Church of Hereford*, No. 20-10528, 2021 WL 688437 (5th Cir. Feb. 22, 2021). HFT denies an effort to relitigate those cases here.

Like the policies before our sister courts, the Policy provides in the event of loss or damage that HFT has a duty to "[s]end [Great Lakes] a signed, sworn proof of loss containing the information we request to investigate the claim . . . within 91 days after our request." *See* Def.'s

App. 3, 30–31, 40, ECF No. 62-1. It also explains that Great Lakes would "supply [HFT] with the necessary forms." *Id.* Like our sister courts, the Court concludes, taken as a whole, the sworn proof of loss is a condition precedent to appraisal here, as evidenced by the nearly identical language indicating a near indistinguishable intent from the parties in *Hereford* and *Brownfield*. *See* 2020 WL 6268477, at *1; 2020 WL 3485620 at *1; *see also City of Spearman v. Tex. Mun. League Intergovernmental Risk Pool*, 601 S.W.3d 72, 76–77 (Tex. App.—Amarillo 2020, no pet.) (concluding that a sworn proof of loss is a condition precedent to payment of a loss because the proof of loss affords the insurer an adequate opportunity to investigate the claim, prevent fraud, and form an intelligent estimate of its rights and liabilities). Similarly, under the Policy, the parties must disagree about the value of the loss before either may invoke appraisal, *see* Pl.'s App. 31, ECF No. 61, but HFT does not dispute that a disagreement about the value of the loss never arose— only whether the insurer should pay. *See Johnson*, 290 S.W.3d at 890. In short, HFT failed to comply with both conditions precedent to activate the appraisal process.[4]

HFT attempts to flip this conclusion on its head, asking the Court to look to the "Claims Handling" section of the Policy requiring Great Lakes to "(3) [r]equest a signed, sworn proof of loss, specifying the information [the insured] must provide and supply[ing] [the insured] with the necessary forms. . . ." Resp. 8, ECF No. 62 (citing Def.'s App. Ex. A. at 40, Ex. B. at 3, ECF Nos. 62-1, 62-2). HFT concedes that factually Great Lakes sent the proof-of-loss form to HFT on July 26, 2019, but contends that "Great Lakes did not . . . request [HFT] to complete [or] return a sworn proof of loss," thereby merely "furnishing" the forms and not "requesting" the signed proof of loss

---

[4] Substantial compliance with the proof-of-loss provision may have satisfied the condition precedent, but HFT does not contend that it substantially complied with the proof-of-loss provision. *See James Constr. Grp., LLC v. Westlake Chem. Corp.*, 594 S.W.3d 722, 742 (Tex. App—Houston [14th Dist.] 2019, pet. filed).

as required by the "Claims Handling" section of the Policy. Resp. 8, ECF No. 62 (citing Def.'s App. Ex. C, Ex. D, ECF Nos. 62-3, 62-4). The Court rejects HFT's argument.

HFT's distinction between "request" and "furnish" based on *Black's Law Dictionary* definitions is a nonstarter. *See* Resp. 8–9, ECF No. 62. First, it severely downplays HFT's deemed knowledge of the contract provisions it entered—namely its own duty to return a sworn proof of loss before proceeding to arbitration. *See Howard*, 347 S.W.3d at 792. Second, even if the Court accepted the furnish/request distinction by HFT, it ignores Texas law requiring the Court to read the Policy in context with the whole of the contract. *See ARM*, 400 F. App'x at 940. All critical provisions, repeatedly reinforcing the proof of loss as a condition precedent to appraisal, suggest that Great Lakes need only "supply" the proof of loss form. *See* Def.'s App. 3, 30–31, 40, ECF No. 62-1; Pl.'s App. 30–31, 40–42, ECF No. 61. It is unclear why the Court must blindly focus on the word "request" in one part of the contract but ignore "supply" in the same and other parts; HFT offers no case law to guide the Court. *See* Resp. 8, ECF No. 62. Thus, the Court is left with the only reasonable construction: under the Policy, Great Lakes would supply the proof of loss form to HFT thereby requesting HFT to complete the form and proceed towards arbitration. *See John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018). HFT, again, concedes that Great Lakes properly supplied the form.[5] Thus, HFT could not invoke the appraisal process under the terms of the Policy. Therefore, the appointment of the umpire and the subsequent award were premature.

### B. Great Lakes Did Not Waive the Sworn Proof of Loss Condition Precedent

HFT argues that, even if Great Lakes complied with condition precedent, Great Lakes waived any requirement of a sworn proof of loss because Great Lakes failed to, within 15 days,

---

[5] And even had it not, it is unclear to the Court how Great Lakes's inaction would have constituted waiver of all its rights and the processes under the appraisal clause. *See infra* Part III(B).

"request a signed, sworn proof of loss, specifying the information Horton must provide and supply Horton with the necessary forms." Resp. 10–11, ECF No. 62. Specifically, Great Lakes did not request a sworn proof of loss from HFT in its July 26, 2018, denial letter. Resp. 11, ECF No. 62; Def.'s App., Ex. C. ¶ 3, ECF No. 62-3. HFT concludes that because "the denial was prior to a request for a sworn proof of loss, as a matter of law, Great Lakes waived the obligation to submit a [] sworn proof of loss before invoking appraisal." Resp. 11, ECF No. 62 (citing no supporting case law). In reply, Great Lakes argues that denial of a claim itself was not based on failure to provide proof of loss and that "Texas courts recognize that denial of a claim does not automatically constitute waiver of other rights under the [P]olicy." Reply ¶ 15, ECF No. 63 (citing *de Laurentis v. United Servs. Auto. Ass'n*, 162 S.W.3d 714, 720 (Tex. App.—Houston [14th Dist.] 2005); *Pounds v. Liberty Lloyds of Tex. Ins. Co.*, 528 S.W.3d 222, 226 (Tex. App.—Houston [14th Dist.] 2017, no pet.)).

Under Texas law, "[t]he failure to perform a condition precedent may be waived by the failure to insist on performance." *Farmer v. Holley*, 237 S.W.3d 758, 760 (Tex. App.—Waco 2007, pet. denied). "[W]aiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Bott v. J.F. Shea Co.*, 388 F.3d 530, 533 (5th Cir. 2004) (citation omitted). "Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the facts and circumstances." *Id.* (citation omitted). "Silence or inaction, for so long a period as to show an intention to yield a known right, is also enough to prove waiver." *Id.* (citation omitted). "Texas courts consider a contract's non-waiver clause to be 'some evidence of non-waiver,' but not a substantive bar to finding that a particular provision was indeed waived." *Id.* at 534 (citation omitted).. However, "[g]iven Texas's strong public policy favoring freedom of contract, there can be no doubt that, as a general

11

proposition, nonwaiver provisions are binding and enforceable." *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 503 (5th Cir. 2018) (citation omitted). "To find waiver of a nonwaiver provision, 'there must, at a minimum, be some act inconsistent with its terms.'" *Id.* (citation omitted). Consequently, under Texas law, nonwaiver provisions create a presumption that a party did not intend to relinquish its rights. *Id.* at 503–04 Therefore, to succeed on an assertion of waiver of a condition precedent, the evidence must show the waiving party clearly demonstrated an intent to waive. *Id.*; *see, e.g., Brownfield*, 2020 WL 6268477, at *8–9.

Here, the Policy includes an identical waiver provision as those in *Hereford* and *Brownfield*:

> This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

Pl.'s App. 19, ECF No. 61. Thus, even accepting HFT's factual characterization, the Court begins with the strong presumption that Great Lakes did not intend to relinquish any other right under the Policy. That presumption includes Great Lakes's right to require of a sworn proof of loss statement prior to an appraisal proceeding—unless the evidence shows a clear intent to waive a right. *See Conn Credit*, 903 F.3d at 503.

HFT points to no evidence, and especially not evidence of clear intent, to overcome the presumption. Based on existence of the non-waiver provision, the presumption, and the undisputed evidence, the Court concludes that Great Lakes did not waive any condition precedent to the Policy's enforcement. Therefore, the sworn proof of loss condition precedent needed to be fulfilled before the appraisal process was properly invoked. Accordingly, the Court concludes that Great Lakes is entitled to judgment as a matter of law on its declaratory judgment action because there

are no disputes of material fact, and the sworn proof of loss was a condition precedent to appraisal that was never satisfied. The appraisal award was neither entered with the appropriate authority nor in substantial compliance with the terms of the Policy.[6]

## IV.    COUNTER-PLAINTIFF HFT'S COUNTERCLAIMS

Great Lakes moves for summary judgment as to HFT's counterclaims. Mot. 1, ECF No. 60. Specifically, it argues that "HFT cannot prove the required elements of breach because it cannot demonstrate that the damages complained of resulted from a covered peril during the policy period . . . because it has not designated any expert witnesses capable of demonstrating causation." *Id.* HFT disagrees, arguing that expert testimony is not required to support causation and that, even if it is, HFT offers three pieces of evidence to support its causation position. Resp. 12–14, ECF No. 62.

HFT fails to identify any evidence in the record to support a genuine dispute of material fact. To support its position, HFT points to (1) the purported itemized appraisal, *see* Def.'s App. Ex. G; (2) the purported appraisal award, *see* Def.'s App. Ex. H; and (3) an unsworn affidavit of alleged fact witness and HFT employee Debbie Roberts, *see* Def.'s App. Ex. I. In light of the Court's conclusion that the appraisal award was entered without the appropriate authority pursuant to the terms of the Policy, the Court declines to consider the itemized appraisal and appraisal award as material evidence. The only remaining evidence to raise a genuine dispute of material fact is Roberts's unsworn single-paragraph statement to the state court on February 1, 2021. *see* Def.'s App. Ex. I. However, "[i]t is a settled rule in this circuit that an unsworn affidavit is incompetent

---

[6] Like Judge Kacsmaryk and Judge Hendricks, this Court finds that HFT is not left without recourse under the Policy. "[A] sworn proof of loss was [not] a condition precedent to Defendant's receiving coverage or to the entire insurance policy." Thus, the Court's order does not "necessarily preclude Defendant from receiving coverage or even attempting to repeat the appraisal process again—provided that it submits a sworn proof of loss first." *Hereford*, 2020 WL 3485623, at *2–3.

to raise a fact issue precluding summary judgment." *Yett v. Peters*, No. 4:08-cv-034-A, 2 (N.D. Tex. Jul. 7, 2008) (McBryde, J.) (quoting *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306). Thus, the Court concludes that HFT has failed to "identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas*, 136 F.3d at 458. Accordingly, the Court will grant summary judgment as to HFT's counterclaims.

V.     **CONCLUSION**

Thus, the Court **GRANTS** Great Lakes's Motion for Summary Judgment as to Great Lakes's claims and HFT's counterclaims, **DECLARES** the appraisal award void, **STRIKES** the appointed umpire, and **DISMISSES with prejudice** HFT's counterclaims. Pursuant to Federal Rule of Civil Procedure 58(a), a final judgment shall issue separately.

**SO ORDERED** on this **24th day** of **March, 2021**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**